LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective
Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

AVRAHAM ABDURAKHMANOV,
*on behalf of himself, FLSA Collective Plaintiffs and the Class*,

    Plaintiff,

v.

SUSHI MESHUGA QUEENS INC.,
SM QUEENS INC.,
SUSHI MESHUGA INC.,
SUSHI SPOT INC.,
ELI ETGAR and URIEL ETGAR,

    Defendants.

Case No.:

CLASS AND COLLECTIVE ACTION COMPLAINT

Jury Trial Demanded

---

Plaintiff, AVRAHAM ABDURAKHMANOV ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, SUSHI MESHUGA QUEENS INC., SM QUEENS INC., SUSHI MESHUGA INC., SUSHI SPOT INC. (collectively, "Corporate Defendants"), ELI ETGAR AND URIEL ETGAR (collectively, "Individual Defendants," and together with Corporate Defendants, "Defendants") and states as follows:

1

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid minimum wage, (2) unpaid overtime compensation, (3) unpaid wages for off-the-clock work, (4) unlawfully retained tips, (5) liquidated damages and (6) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid minimum wage, (2) unpaid overtime compensation, (3) unpaid wages for off-the-clock work, (4) unpaid spread of hours premium, (5) unlawfully retained tips, (6) statutory penalties, (7) liquidated damages and (8) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff AVRAHAM ABDURAKHMANOV is a resident of Queens County, New York.

6. Defendants operate an enterprise comprised of three restaurants under the common trade name "Sushi Meshuga" with addresses as follows:

    (a) 73-01 Main Street, Queens, NY 11367 ("Main Street Location");

    (b) 5115 13th Avenue, Brooklyn, NY 11219 ("Boro Park Location"); and

    (c) 1637 East 17th Street, Brooklyn, NY 11229 ("Kings Highway Location") (collectively, "Sushi Meshuga Restaurants").

Defendants operate Sushi Meshuga Restaurants as a single integrated enterprise. Specifically, Sushi Meshuga Restaurants are engaged in related activities, share common ownership and have a common business purpose. Sushi Meshuga Restaurants are commonly owned by the Individual Defendants ELI ETGAR and URIEL ETGAR. Sushi Meshuga Restaurants share a common logo, share a common feel and look, serve similar menu items and are advertised jointly on Defendants' website (http://www.sushimeshuga.com). Supplies are interchangeable among Sushi Meshuga Restaurants as needed. Defendants implement the same employment policies and practices among Sushi Meshuga Restaurants.

7. Corporate Defendants:

(a) Corporate Defendant SUSHI MESHUGA QUEENS INC. is a domestic business corporation organized under the laws of the State of New York, with a principle place of business located at 73-01 Main Street, Queens, NY 11367 and an address for service of process located at 1274 49th Street, Suite 321, Brooklyn, NY 11219. Defendants operate Sushi Meshuga Main Street Location through SUSHI MESHUGA QUEENS INC.

(b) Corporate Defendant SM QUEENS INC. is a domestic business corporation organized under the laws of the State of New York, with a principle place of business and an address for service of process located at 73-01 Main Street, Queens, NY 11367. Defendants operate Sushi Meshuga Main Street Location through SM QUEENS INC.

(c) Corporate Defendant SUSHI MESHUGA INC. is a domestic business corporation organized under the laws of the State of New York, with a principle place of business located at 5115 13th Avenue, Brooklyn, NY 11219 and an address for service of process located at 1274 49th Street, Suite 321, Brooklyn, NY 11219. Defendants operate Sushi Meshuga Boro Park Location through SUSHI MESHUGA INC.

(d) Corporate Defendant SUSHI SPOT INC. is a domestic business corporation organized under the laws of the State of New York, with a principle place of business and an address for service of process located at 1637 East 17th Street, Brooklyn, NY 11229. Defendants operate Sushi Meshuga Kings Highway Location through SUSHI SPOT INC.

8. Individual Defendants:

(e) Individual Defendant ELI ETGAR is an owner and senior executive officer of Corporate Defendants. ELI ETGAR exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. ELI ETGAR had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to ELI ETGAR regarding any of the terms of their employment, and ELI ETGAR would have the authority to effect any changes to the quality and terms of employees' employment. ELI ETGAR regularly visited the restaurant and directly reprimanded any employee who did not perform his duties correctly. ELI ETGAR ensured that employees effectively serve customers and that the business is operating efficiently and profitably. ELI ETGAR exercised functional control over the business and financial operations of Corporate Defendants.

(f) Individual Defendant URIEL ETGAR was is an owner and senior executive officer of Corporate Defendants. URIEL ETGAR exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. URIEL ETGAR had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to URIEL ETGAR regarding any of the terms of their employment, and URIEL

ETGAR would have the authority to effect any changes to the quality and terms of employees' employment. URIEL ETGAR regularly visited the restaurant and directly reprimanded any employee who did not perform his duties correctly. URIEL ETGAR ensured that employees effectively serve customers and that the business is operating efficiently and profitably. URIEL ETGAR exercised functional control over the business and financial operations of Corporate Defendants.

9. At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

10. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

11. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including cooks, food preparers, dishwashers, cashiers, hosts/hostesses, porters, bartenders, barbacks, servers, runners, bussers and delivery persons, employed by Defendants at each of the Sushi Meshuga Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

12. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper minimum wage, overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek, and compensation for

all hours worked due to a policy of time shaving. With regard to Plaintiff and a subgroup of FLSA Collective Plaintiffs who were tipped employees (i.e. bartenders, barbacks, servers, bussers, runners and delivery persons) ("Tipped FLSA Collective Plaintiffs"), Defendants were not entitled to take any tip credits because they failed to meet statutory requirements under the FLSA. In addition, Plaintiff and Tipped FLSA Collective Plaintiffs suffered from Defendants' policy of unlawfully retaining tips that they earned. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

13. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

14. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including cooks, food preparers, dishwashers, cashiers, hosts/hostesses, porters, bartenders, barbacks, servers, runners, bussers and delivery persons, employed by Defendants at each of the Sushi Meshuga Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

15. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

16. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of servers, bussers, runners, bartenders, barbacks and delivery persons ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of both the Class and the Tipped Subclass.

17. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay the prevailing minimum wage, (ii) failing to pay overtime compensation, (iii) failing to pay wages for all hours worked due to time shaving, (iv) failing to pay spread of hours premium, (v) failing to provide proper wage statements per requirements of the New York Labor Law, and (vi) failing to provide proper wage and hour notices per requirements of the New York Labor Law. With regard to Plaintiff and the Tipped Subclass, Defendants were not entitled to take any tip credits because they failed to meet statutory requirements under the New York Labor Law. In addition, the Tipped Subclass suffered from Defendants' policy of unlawfully retaining tips that they earned. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff

and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

18. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

19. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In

addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

20. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

21. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a) Whether Defendants employed Plaintiff and Class members within the meaning of the New York law;

(b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

(c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class members for their work;

(d) Whether Defendants properly notified Plaintiff and Class members of their regular hourly rate and overtime rate;

(e) Whether Defendants improperly paid Plaintiff and Class members on a fixed salary basis, when New York Labor Law requires that all non-exempt employees be paid on an hourly basis;

(f) Whether Defendants paid Plaintiff and Class members the proper minimum wage under the New York Labor Law;

(g) Whether Defendants provided proper notice to Plaintiff and Tipped Subclass members that Defendants were taking a tip credit;

(h) Whether Defendants provided proper wage statements informing Plaintiff and Tipped Subclass members of the amount of tip credit taken for each payment period and other information required to be provided on wage statements;

(i) Whether Defendants took the proper amount of tip credit allowance from Plaintiff and Tipped Subclass members under the New York Labor Law;

(j) Whether Defendants required Plaintiff and Tipped Subclass members to perform non-tipped work for more than 20 percent of their workday;

(k) Whether Defendants kept daily records of tips earned by Plaintiff and the Tipped Subclass members;

(l) Whether Defendants paid Plaintiff and Class members the proper overtime compensation under the New York Labor Law;

(m) Whether Defendants paid Plaintiff and Class members wages for all hours worked;

(n) Whether Defendants paid Plaintiff and Class members the spread of hours premium as required by the New York Labor Law;

(o) Whether Defendants unlawfully retained tips earned by Plaintiff and the Tipped Subclass from customers;

(p) Whether Defendants provided proper wage statements to Plaintiff and Class members per requirements of the New York Labor Law; and

(q) Whether Defendants provided proper wage and hour notices to Plaintiff and Class members per requirements of the New York Labor Law.

## STATEMENT OF FACTS

22. From in or about September 2015 until on or about February 15, 2017, Plaintiff AVRAHAM ABDURAKHMANOV was employed by Defendants to work as a server at Defendants' "Sushi Meshuga" restaurant located at 73-01 Main Street, Queens, NY 11367.

23. From the beginning of his employment with Defendants until in or about September 2016, Plaintiff AVRAHAM ABDURAKHMANOV regularly worked about 49 to 53 hours per week with the following schedule: 11 hours per day, from 1:00 p.m. to 12:00 a.m., on Sundays; 8.5 hours, from 3:30 p.m. to 12:00 a.m., on Mondays through Thursdays; and about 4 to 8 hours, 45 minutes after the Jewish Sabbath to 2:00 a.m. on Saturdays. During the summer season in 2016, Plaintiff worked an additional 4 hours, from 11:00 a.m. to 3 p.m., on Fridays.

24. From in or about October 2016 until the end of his employment with Defendants, Plaintiff AVRAHAM ABDURAKHMANOV regularly worked about 52 to 54 hours per week with the following schedule: 12 hours per day, from 12:00 p.m. to 12:00 a.m., on Sundays; 8.5 hours, from 3:30 p.m. to 12:00 a.m., on Mondays through Thursdays; and about 6 to 8 hours, 45 minutes after the Jewish Sabbath to 2:00 a.m. on Saturdays.

25. Based on Plaintiff AVRAHAM ABDURAKHMANOV's direct observations and conversations with other employees at Sushi Meshuga Restaurants, all FLSA Collective Plaintiffs and Class members worked similar hours.

26. Throughout his employment with Defendants, Plaintiff AVRAHAM ABDURAKHMANOV was paid on a fixed weekly salary regardless of actual hours worked. Specifically, (i) from the beginning of his employment with Defendants until in or about November 2015, Plaintiff was paid a fixed salary of $600 per workweek in cash; (ii) from in or about December 2015 until in or about May 2016, Plaintiff was paid a fixed salary of $400 per workweek in cash; (iii) from in or about June 2016 until in or about November 2016, Plaintiff

11

was paid a fixed salary of $300 per workweek in cash; and (iv) from in or about December 2016 until the end of his employment with Defendants, Plaintiff was paid a fixed salary of $277 per workweek in check. However, there was never any understanding that the fixed weekly salary was intended to cover any overtime hours worked by Plaintiff AVRAHAM ABDURAKHMANOV. Based on Plaintiff AVRAHAM ABDURAKHMANOV's direct observations and conversations with other employees at Sushi Meshuga Restaurants, FLSA Collective Plaintiffs and Class members were similarly paid on a fixed salary basis with no agreement that such fixed salary covered their overtime hours worked.

27. Thoughout his employment with Defendants, Plaintiff did not receive any wage statements with his wage payments from Defendants. From the beginning of his employment until in or about November 2016, Plaintiff was paid in cash without any wage statements. Even after Defendants started paying Plaintiff in company checks in or about December 2016, Defendants failed to provide Plaintiff with any wage statements.

28. At all relevant times, Defendants paid Plaintiff, FLSA Collective Plaintiffs and Class members at hourly rates below the prevailing minimum wage in violation of the FLSA and NYLL.

29. Plaintiff, FLSA Collective Plaintiffs and Tipped Subclass members did not receive proper notice that Defendants were claiming a tip credit. In addition, Plaintiff, Tipped FLSA Collective Plaintiffs and Tipped Subclass members did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received. Further, Defendants failed to provide proper wage statements informing Plaintiff, Tipped FLSA Collective Plaintiffs and Tipped Subclass members of the amount of tip credit taken for each payment period.

30. During his employment with Defendants, Plaintiff was required to engaged in various non-tipped activities, such as working the cash register, preparing cash sales reports, helping in the kitchen, unloading deliveries, cleaning the restaurant, and handing out flyers, for twenty percent (20%) or more of their workday. Based on Plaintiff's direct observations and conversations with other employees, Tipped FLSA Collective Plaintiffs and Tipped Subclass members similarly spent at least twenty percent (20%) of their workday performing such non-tipped activities.

31. Throughout his employment with Defendants, Plaintiff suffered from Defendants' invalid tip pooling arrangement, under which Defendants unlawfully retained forty percent (40%) the tips that he earned from customers. Similarly, Tipped FLSA Collective Plaintiffs and Tipped Subclass members suffered from Defendants' policy to keep forty percent (40%) of the tips that the employees earned from customers.

32. At the beginning of his shift on about 2 days each week, Plaintiff AVRAHAM ABDURAKHMANOV was instructed to work for about an hour before being allowed to clock in. As a result, Plaintiff was not paid for about 2 hours of work every week. Based on Plaintiff's direct observations and conversations with other employees, FLSA Collective Plaintiffs and Class members similarly suffered from Defendants' time shaving policy, which regularly required them to engage in off-the-clock work without any compensation.

33. At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime compensation in violation of the FLSA and NYLL.

34. At all times relevant, the workdays of Plaintiff and Class members regularly exceeded ten (10) hours per day. However, Defendants failed to pay Plaintiff and Class members the spread of hours premium as required by NYLL.

35. At no time during the relevant time periods did Defendants provide Plaintiff or Class members with proper wage and hour notices or wage statements as required by NYLL.

36. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members either the FLSA minimum wage or the New York State minimum wage. With regard to Tipped FLSA Collective Plaintiffs and Tipped Subclass members, Defendants were not entitled to take any tip credits because they failed to meet statutory requirements under the FLSA and NYLL.

37. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked in excess of forty (40) hours per week.

38. Defendants knowingly and willfully violated the rights of Plaintiff, FLSA Collective Plaintiffs and Class members by requiring them to engage in off-the-work and failing to pay them wages for all hours worked, in violation of the FLSA and NYLL.

39. Plaintiff and Class members' rights by paying them on a fixed salary basis in violation of NYLL because Plaintiff and Class members are non-exempt employees who must be paid on an hourly basis.

40. Defendants knowingly and willfully violated Plaintiff and Class members' rights by paying them on a fixed salary basis in violation of NYLL because Plaintiff and Class members are non-exempt employees who must be paid on an hourly basis.

41. Defendants knowingly and willfully operated their business with a policy of not paying the spread of hour premium to Plaintiff and Class members, in violation of the NYLL.

42. Defendants knowingly and willfully engaged in a policy and practice of illegally retaining tips earned by Plaintiff, Tipped FLSA Collective Plaintiffs and Tipped Subclass Members, in violation of the FLSA and NYLL.

43. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class members, in violation of the NYLL.

44. Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class members, in violation of the NYLL.

45. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

46. Plaintiff realleges and reavers Paragraphs 1 through 45 of this class and collective action Complaint as if fully set forth herein.

47. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

49. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

50. At all relevent times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs for their hours worked.

51. At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

52. At all relevant times, Defendants had a policy and practice of failing to pay wages for all hours worked to Plaintiff and FLSA Collective Plaintiffs.

53. At all relevant times, Defendants had a unlawful policy and practice of retaining tips earned by Plaintiff and FLSA Collective Plaintiffs.

54. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs at the the statutory minimum wage and overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week, and failure to allow Plaintiff and Tipped FLSA Collective Plaintiffs to retain all tips earned without deduction or retention, when Defendants knew or should have known such was due.

55. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

56. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

57. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wage, unpaid overtime compensation, unpaid wages for off-the-clock work, and compensation for unlawfully retained gratuities, plus an equal amount as liquidated damages.

58. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

59. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

60. Plaintiff realleges and reavers Paragraphs 1 through 59 of this class and collective action Complaint as if fully set forth herein.

61. At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

62. Defendants knowingly and willfully violated Plaintiff's and Class members' rights by failing to pay them the minimum wage required by the New York Labor Law.

63. Defendants knowingly and willfully violated Plaintiff's and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

64. Defendants willfully violated Plaintiff's and Class members' rights by failing to pay the spread of hours premium for each workday that exceeded ten (10) hours.

65. Defendants willfully violated Plaintiff's and Class members' rights by requiring them to engage in off-the-clock work and failing pay wages for all hours worked.

66. Defendants willfully violated Plaintiff's and Class members' rights by retaining tips earned from customers.

67. Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class members, as required by New York Labor Law § 195(1).

68. Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class members with every wage payment, as required by New York Labor Law § 195(3).

69. Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid minimum wage, unpaid overtime compensation, unpaid wages for off-the-clock work, unpaid spread of hours premium, compensation for unlawfully retained gratuities, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid minimum wage due under the FLSA and NYLL;

d. An award of unpaid overtime compensation due under the FLSA and NYLL;

e. An award of unpaid wage for off-the-clock work due under the FLSA and NYLL;

f. An award of unpaid compensation due to unlawful retention of tips, due under the FLSA and NYLL;

g. An award of unpaid spread of hours due under the NYLL;

h. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage, overtime compensation and wages for off-the-clock work, and Defendants' willful retention of tips, pursuant to the FLSA;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage, overtime compensation, wages for off-the-clock work, and spread of hours premium, and Defendants' willful retention of tips, pursuant to the NYLL;

k. An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

l. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiff as Representative of the Class; and

o. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: March 21, 2017			Respectfully submitted,

					By:	*/s/ C.K. Lee*
						C.K. Lee, Esq.

						LEE LITIGATION GROUP, PLLC
						C.K. Lee (CL 4086)
						Anne Seelig (AS 3976)
						30 East 39th Street, Second Floor
						New York, NY 10016
						Tel.: (212) 465-1188
						Fax: (212) 465-1181

						*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*